UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

Case No. 17-cr-20183-2

v

HON. MARK A. GOLDSMITH

D-2 JANETTE GAGGO TAWFIK,

       Defendant.

_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO
REOPEN HER DETENTION HEARING (Dkt. 428)**

This matter is before the Court on Defendant Janette Gaggo Tawfik's motion to reopen her detention hearing under 18 U.S.C. § 3142(f)(2) (Dkt. 428). Tawfik contends that the risks associated with the COVID-19 pandemic, as well as co-Defendant Darrick Bell's arrest, constitute new and material evidence weighing in favor of her release. For the reasons that follow, Tawfik's motion is denied.

## I. BACKGROUND

A grand jury originally indicted Tawfik on six charges stemming from her alleged role in an extensive human-trafficking and drug-distribution conspiracy at the Victory Inn hotel (the "Victory Inn") in Detroit, Michigan. Indictment (Dkt. 17). Following a hearing before Magistrate Judge Majzoub, Tawfik was ordered detained pending trial. Order of Detention (Dkt. 28). The magistrate judge found that there was clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." Id. at 2. The magistrate judge based this decision upon the nature of the charges

against Tawfik, "which allege sex offenses involving minors and adults, sex trafficking and abuse, as well as distribution of illegal drugs[.]" Id. at 3.

Tawfik then requested pretrial release from this Court. After a hearing on April 6, 2017, this Court found that although Tawfik had rebutted the presumption of detention under 18 U.S.C. § 3142(e), consideration of all of the evidence, as well as the factors set forth under 18 U.S.C. § 3142(g), required detention. See United States v. Tawfik, No. 17-20183, 2017 WL 1457494, at *8 (E.D. Mich. Apr. 25, 2017). The Court concluded that "Tawfik presents a danger to the community and a risk of flight, and that no condition or combination of conditions could reasonably assure the safety [of] the community and her appearance in court." Id.

Since that time, the grand jury has returned a superseding indictment, now charging Tawfik with fifteen counts related to sex trafficking and drug distribution. Superseding Indictment (Dkt. 98). Tawfik now requests that this Court reopen her detention hearing and release her to home confinement under such terms and conditions as the Court deems appropriate.

## II. ANALYSIS

This Court has discretion in deciding whether to reopen a detention hearing under 18 U.S.C. § 3142(f)(2). See United States v. Watson, 475 Fed. App'x 598, 599-600 (6th Cir. 2012). The detention hearing may be reopened if (i) "information exists that was not known to the movant at the time of the hearing[;]" and (ii) that new information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Tawfik argues that two pieces of new information weigh in favor of her release: (i) the emergence of the COVID-19 pandemic, and (ii) the arrest of co-Defendant Darrick Bell, Tawfik's former romantic partner.

## A. COVID-19

Tawfik contends that the emergence of the COVID-19 pandemic constitutes new and material information bearing on her health and physical condition, as relevant to the detention inquiry under § 3142(g)(3)(A). Def. Mot. at 3. According to Tawfik, pretrial release is warranted in light of the health risks posed by continued incarceration during the pandemic. Id.

The Court is mindful of the exceptionally grave and unprecedented nature of COVID-19, which has continued to spread exponentially throughout the State of Michigan. And as acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities. See United States v. Kennedy, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020). These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. Id.

While the generalized risks of COVID-19 cannot be disputed, courts have held that these risks, without more, do not amount to a "material change of circumstances warranting a renewed evaluation of [a] prior detention order." United States v. Dodd, No. 20-0016, 2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020) (collecting cases). Rather, courts evaluating whether pretrial release is necessary must evaluate the particularized risks posed to an individual defendant. United States v. Lee, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020). Some courts evaluating the impact of COVID-19 on the pretrial release calculus have considered the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed

release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

United States v. Clark, No. 19-40068, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Although these factors have been applied in the context of motions for release under 18 U.S.C. § 3142(i), they are nevertheless relevant under the present procedural posture.[1]

First, the § 3142(g) factors evaluated in the Court's opinion denying Tawfik's motion for pretrial release overwhelmingly demonstrate that she presents a danger to the community and a risk of flight, and that no condition or combination of conditions could reasonably assure the safety of the community and her appearance in court. Tawfik is alleged to have taken a managing role in an extensive human-trafficking and drug-distribution conspiracy. Surveillance video proffered by the Government documented "hundreds of drug transactions; widespread prostitution; violence; and members of the conspiracy, including Tawfik, involved in these activities." Tawfik, 2017 WL 1457494, at *3. The Government's proffered evidence demonstrated that the conspirators, including Tawfik, employed violence, threats, degrading actions, and dangerous addictive drugs to coerce human trafficking victims into committing commercial sex acts. Id. at *5. According to witnesses, Tawfik "instructed prostitutes to get to work, and she was so abusive to some female victims that they referred to her as the 'Dragon Lady.'" Id. at *7. The Court also noted Tawfik's poor character and untrustworthiness, as demonstrated through evidence contradicting her assertions before the magistrate judge that she was no longer romantically involved with Bell. Id. Given the serious nature of the crimes alleged, Tawfik's capacity for violence, and her

---

[1] Subsection 3142(i) provides that a judicial officer may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

4

demonstrated untrustworthiness, this factor weighs decidedly in favor of her continued detention.

Second, Tawfik's concerns are generalized and speculative. Tawfik claims she suffers from hypertension and that she has experienced two fainting spells over the past year. Def. Mot. at 3. However, Tawfik, who is forty-three, has not provided any evidence demonstrating that she is receiving inadequate medical care for her condition or that her condition is severe enough to place her at greater risk of developing complications as a result of COVID-19. See United States v. Jones, No. 19-00249, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (denying motion for release under § 3142(i) because the defendant failed to demonstrate that his medical needs were not being addressed at the detention facility); see also United States v. Green, No. 19-85, 2020 WL 1493561, at *2 (W.D. Pa. Mar. 27, 2020) (same).

Nor has Tawfik demonstrated that she has been exposed to the virus as a result of her incarceration. To the contrary, the Government responds that Lieutenant Ryan McConnachie, of the Sanilac County Sheriff's Office, reports that no prisoners at Sanilac County Jail, where Tawfik is detained, have been diagnosed with COVID-19 as of March 30, 2020. Gov't Resp. at 5-6 (Dkt. 433).[2] Further, Sanilac has implemented a variety of precautions in an effort to reduce the risk of COVID-19 transmission within the prison. Sanilac, which is currently operating at 60% of its total housing capacity, is limiting its intake of new detainees to new arrests for violent crimes. Id. at 7-8. All new detainees are being medically screened for fever and other COVID-19 symptoms before entering the jail. Id. at 7. If a detainee's responses to screening questions raise concerns, or if a detainee exhibits any symptoms, that individual would be either evaluated by Sanilac's onsite

---

[2] Sanilac reports that on March 14, 2020, one detainee had contact with a defense attorney who, Sanilac subsequently learned, previously had contact with a person later diagnosed with COVID-19. Gov't Resp. at 6 n.1. As a precaution, Sanilac placed the detainee in quarantine for fourteen days. Id. The detainee did not develop any symptoms or illness during those fourteen days and has since been removed from quarantine. Id.

medical staff or transported directly to a local hospital for medical clearance. Id. As a matter of course, new detainees are being isolated in quarantine for several days to further screen for development of COVID-19 symptoms. Id. Any detainee who does exhibit symptoms is quarantined for fourteen days. Id. Should any detainees develop COVID-19, the record reflects that Sanilac has the capacity to address the illness, as it employs an onsite nurse and doctor. Id. at 6.

Further, Sanilac has ceased all visitation from family members and attorneys. Id. at 8. Staff members are screened daily with a questionnaire and temperature check and have been directed not to enter the facility if they feel sick. Id. Detainees have been provided with disinfectant spray to use within their cells, and jail personnel wipe down surfaces within the facility several times per day. Id. Finally, all social programming for detainees has been suspended. Id. Such measures are consistent with those recommended by the CDC. See Kennedy, 2020 WL 1493481, at *2. This Court has not discovered any press coverage contradicting the Government's representations regarding the conditions and precautions being implemented at Sanilac.[3] This factor, therefore, also weighs in favor of continued detention.

Third, Tawfik has not explained how her release would minimize her risk of contracting COVID-19. Tawfik proposes confinement at the family home where her husband resides and where she would have access to a private bedroom. Pl. Mot. at 3. However, she does not explain who else will reside at or frequent the home (such as her four children), or identify any COVID-

---

[3] Indeed, Sanilac has worked with the courts and sheriff department to release as many inmates as possible without endangering the public. See Times Herald, available at https://www.thetimesherald.com/story/news/2020/04/02/st-clair-county-jail-reducing-inmate-population-during-coronavirus-pandemic/5110937002/ (last visited Apr. 6, 2020). Further, as of April 3, 2020, Sanilac County reported only ten cases of COVID-19. See Confirmed Cases By County, available at https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html (last visited Apr. 6, 2020).

19 precautions being implemented there. See United States v. Smoot, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020). In contrast, the record demonstrates that access to Sanilac is limited and strictly enforced, thereby minimizing Tawfik's potential exposure to the virus. See id. This factor weighs in favor of Tawfik's continued detention.

Finally, Tawfik's release to home confinement would increase the risk of others contracting COVID-19. As other courts have recognized, "'[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.'" Id. (quoting Clark, 2020 WL 1446895, at *7); see also United States v. Aiad-Toss, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) (noting that releasing a defendant to home detention and electronic monitoring unduly burdens pretrial services officers, who must perform installation and monitoring). Additionally, Tawfik's release may increase the risk of infection to the family members with whom she would reside. See Dodd, 2020 WL 1547419, at *3. Consequently, this factor likewise favors Tawfik's continued detention.

In sum, these factors do not demonstrate that Tawfik's pretrial release is warranted in light of the risks presented by the COVID-19 pandemic. Accordingly, while the emergence of COVID-19 constitutes new information, it does not have a material bearing on whether there are conditions of release that will reasonably assure Tawfik's appearance and the safety of the community.

**B. Bell's Arrest**

Tawfik next contends that Bell's arrest constitutes new and material information bearing on her risk of nonappearance, as there is no longer any danger that she would attempt to abscond in order to reunite with him. Def. Mot. at 4. But Tawfik's feelings toward Bell and the possibility

that she may attempt to reunite with him were not the only facts that led this Court to conclude that she would pose a danger to the community if released, as described above. Thus, neither Bell's arrest nor Tawfik's changed feelings toward Bell materially bear on the issue of "whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(f).

### III. CONCLUSION

The Court finds that while Tawfik has presented new information, it does not have a material bearing on the issue of whether there are conditions of release that will reasonably assure her appearance in court and the safety of the community. Accordingly, Tawfik's motion for pretrial release (Dkt. 428) is denied.

SO ORDERED.

Dated: April 6, 2020  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 6, 2020.

s/Karri Sandusky  
KARRI SANDUSKY  
Case Manager