# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: April 20, 2021

Ms. Danielle Asher
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226

Mr. Michael S. Friedman
Law Offices
2833 Crooks Road
Suite 104
Troy, MI 48084

Re: Case No. 20-2254, *USA v. Janette Tawfik*
Originating Case No. : 2:17-cr-20183-2

Dear Counsel,

The Court issued the enclosed Order today in this case.

Sincerely yours,

s/Ryan E. Orme
Case Manager
Direct Dial No. 513-564-7079

cc: Ms. Kinikia D. Essix

Enclosure

Mandate to issue

No. 20-2254

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **FILED** |
| ) | Apr 20, 2021 |
| Plaintiff-Appellee, ) | DEBORAH S. HUNT, Clerk |
| ) | |
| v. ) | O R D E R |
| ) | |
| JANETTE GAGGO TAWFIK, ) | |
| ) | |
| Defendant-Appellant. ) | |

Before: GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

Defendant Janette Gaggo Tawfik appeals the district court's order denying her fourth motion to revoke the district court's detention order. She argues that her ongoing detention since 2017 is so long as to violate due process and that the relevant factors weigh in favor or her release. The government opposes pretrial release, and Tawfik replies. Both Tawfik and the government waive oral argument. The facts and legal arguments are adequately presented on the briefs; thus, the panel unanimously agrees that oral argument is not necessary. Fed. R. App. P. 34(a)(2)(C).

Pretrial release is governed by 18 U.S.C. § 3142, which holds that a person charged with an offense should be released before trial so long as the court can be reasonably assured that the person will appear at their next court date and will not pose a danger to others. If, however, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the

community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

The judicial officer must consider four factors in making a detention finding: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's . . . past conduct, . . . criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). We "review the district court's factual findings for clear error, but we consider mixed questions of law and fact—including the ultimate question whether detention is warranted—de novo." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

A lengthy pretrial detention can violate the Due Process Clause of the Fifth Amendment when it lasts long enough to become punitive. *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). There are "four factors to be considered in determining if the pretrial detention is unconstitutionally excessive," two of which are part of the initial detention decision—"the gravity of the charges . . . and the strength of the evidence upon which the detention was based." *Id.* We also consider "the length of the detention" and "the prosecution's responsibility for the delay of the trial." *Id.*

Tawfik's initial detention was justified by the balance of relevant factors, which still holds true today. First, she is charged with multiple serious offenses. Indeed, because she was charged with a drug crime that carries a maximum term of ten years or more, sex crimes, and crimes involving minors, she faces a rebuttable presumption of detention. 18 U.S.C. § 3142(e)(3)(A), (E). And the government proffered numerous first-hand accounts, corroborated by confidential

informants, police surveillance, and the Victory Inn's own closed-circuit video to support the charges. Tawfik argues that the district court placed too much emphasis on her charges rather than on her actual conduct, asserting that nothing ever showed her direct participation or use of violence, and that her minor participation did not support the most serious charge pending against her. However, we are tasked with assessing "the nature and circumstances of the offense charged," 18 U.S.C. § 3142(g), and there is significant evidence that Tawfik participated in a conspiracy involving several serious crimes. Even if she is right that some charges are better supported than others, the evidence is enough to conclude that the first and second factors weigh against release, especially given the presumption of detention in 18 U.S.C. § 3142(e)(3)(A).

As the district court concluded, Tawfik's history and characteristics are mixed. The district court noted her "strong family connections to the area, a consistent work history, and only a single retail fraud conviction," but recognized that her close relationship with Bell—a convicted murderer and drug dealer, whom she brought into her home with her minor children and about whom she lied to the magistrate judge—demonstrated a lack of character. The district court also concluded that Tawfik's involvement with Bell, confirmed by first-hand witnesses and Tawfik's own text messages, undermined her assertions that her local family would be a check on her risk of flight or dangerousness. In addition, Tawfik admitted that she instructed the victims to engage in prostitution, further damaging her character and trustworthiness. The government proffered substantial evidence to support the conclusion that Tawfik posed a risk of danger or flight if released. *See Stone*, 608 F.3d at 948 ("[The second] factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt."). And her steady employment was at the Victory Inn—the site of the alleged drug and sex ring.

The last factor also supports detention. As the district court noted, Tawfik was involved in trafficking both humans and drugs—two crimes that pose significant dangers to the public at large, as made clear by the government's proffered evidence of violence, addiction, and exploitation found throughout the Victory Inn. Indeed, overdoses and deaths were regular occurrences at the motel. The district court also noted that Tawfik had put her own children at risk by welcoming Bell into her home. That she was so close to someone as violent as Bell is further evidence for the district court's conclusion that she posed a danger to the community if released.

Having determined that Tawfik's initial detention was warranted, we must next determine whether Tawfik's detention has gone on so long as to violate due process. At this point, Tawfik has been in custody awaiting trial for roughly five years—a long time. But "[t]he length of pretrial detention is not dispositive, and will, by itself, rarely offend due process." *Watson*, 475 F. App'x at 601 (citing *United States v. El–Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (per curiam)).

In cases involving long pretrial detentions, the government's part in the delay is often decisive. In this case, the government bears little blame, something Tawfik does not dispute. As the district court noted in its most recent denial of release, the parties agreed early on to a discovery schedule that contemplated future extensions as necessary to review the thousands of hours of surveillance footage. Although the government produced multiple supplements to its list of relevant footage, Tawfik agreed to a final production date. That process alone took nearly two years. The district court found that the government was diligent in its production of discovery and met the stipulated deadlines. Thereafter, Tawfik and her co-defendants decided that a full review of all 14,000+ hours of footage was necessary to identify any exculpatory footage. The last of those stipulated continuances was entered in November 2019, with a trial date set for the Fall of 2020. When the coronavirus reached America in early 2020, the case ground to a halt. The district

court noted in its opinion and order denying Tawfik's most recent motion for release that jury trials have been on hold since March 2020. When the delay is attributable to the COVID-19 pandemic, courts have concluded that the delay is beyond the government's control. *See United States v. Zhukov*, No. 18-CR-633, 2020 WL 6302298, at *3 (E.D.N.Y. Oct. 27, 2020) ("[T]he delay in bringing this case to trial is overwhelmingly attributable to one factor—the COVID-19 epidemic—that is surely beyond the prosecution's control."); *United States v. Crittenden*, No. 4:20-CR-7, 2020 WL 5223303, at *3 (M.D. Ga. Sept. 1, 2020) ("Certainly, a global pandemic that is beyond the control of all the parties involved justifies an appropriate delay.").

Tawfik presents several cases in which long detentions were found to be constitutionally suspect, but each one can be distinguished. In most, the government bore a significant role in the delay. *See United States v. Nagi*, No. 09-1995 (6th Cir. Dec. 14, 2009); *United States v. Millan*, 4 F.3d 1038, 1045 (2d Cir. 1993); *United States v. Gonzales Claudio*, 806 F.2d 334, 342 (2d Cir. 1986); *United States v. Omar*, 157 F. Supp. 3d 707, 710 (M.D. Tenn. 2016). At the same time, cases as complex as Tawfik's require extensive discovery. In *United States v. Briggs*, 697 F.3d 98, 102 (2d Cir. 2012), ongoing detention was approved where the case was "slowed by repeated motions and abundant discovery," leading the Second Circuit to reference an earlier case in which "the defendant's long detention was justified in part by 'the inherent complexities of this large multi-defendant case, which presents defense counsel with voluminous discovery to absorb and the court with myriad motions to address.'" (quoting *United States v. Hill*, 462 F. App'x. 125, 127 (2d Cir. 2012) (summary order)). Like in *Briggs*, progress in this case was "slowed by repeated motions and abundant discovery." *See id*. And, like here, the government proffered significant evidence in support of Briggs's dangerousness, leading the court to approve of the defendant's continued detention. *See id*.

No. 20-2254
-6-

Ultimately, the balance of relevant factors supports Tawfik's continued detention. The duration of her pretrial confinement is significant. But so too are the charges against her, the government's evidence, and the burden of preparing for a complex multi-defendant trial. Crucially, the delay is not the government's fault; the early portion is attributable to stipulated extensions to conduct discovery and the more recent postponements are due to a global pandemic.

Accordingly, the district court's detention order is **AFFIRMED**.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk