UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                           Criminal Action No. 17-20183

vs.

                                    HON. MARK A. GOLDSMITH

D-2 JANETTE GAGGO TAWFIK,
D-3 SHELVIE LEWIS AVERY,
D-4 TERRY PRUITT,
D-5 HAROLD LASHAWN NERO,

        Defendants.

_____/

**OPINION & ORDER**
**(1) GRANTING IN PART AND DEFERRING IN PART DEFENDANTS NERO AND PRUITT'S MOTION TO PRECLUDE PRIOR CONVICTIONS (Dkt. 380, 385); (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS NERO, PRUITT, AVERY, AND TAWFIK'S MOTION TO PRECLUDE DEROGATORY TERMS (Dkts. 382, 384, 385, 387); AND (3) DENYING DEFENDANT NERO'S MOTION TO PRECLUDE CALLING WITNESSES MULTIPLE TIMES (Dkt. 516)**

This case involves allegations of sex trafficking and distribution of controlled substances at the Victory Inn. 2d Superseding Indictment (Dkt. 681). This matter is before the Court on several motions filed by Defendant Harold Lashawn Nero: (i) a motion to preclude admission of Nero's prior convictions (Dkt. 380);[1] (ii) a motion to preclude derogatory terms (Dkt. 382);[2] and (iii) a motion to preclude calling witnesses multiple times (Dkt. 516). For the reasons that follow, the Court grants in part and defers in part Nero's motion to preclude his prior convictions, grants

---

[1] Defendant Terry Pruitt filed a notice of joinder in this motion (Dkt. 385). The Court resolves Pruitt's joinder in the same manner that it resolves Nero's motion.

[2] Defendants Pruitt, Shelvie Lewis Avery, and Janette Gaggo Tawfik filed notices of joinder in this motion (Dkts. 384, 385, 387). The Court resolves these joinders in the same manner that it resolves Nero's motion.

in part and denies in part Nero's motion to preclude derogatory terms, and denies Nero's motion

to preclude calling witnesses multiple times.[3]

## I. ANALYSIS

The Court addresses in turn Nero's three motions.

### A. Prior Convictions

By way of background, Nero has the following prior convictions: (i) in 1995, felony

firearm and assault with a dangerous weapon; (ii) in 1999, delivery/manufacture of a controlled

substance ; (iii) in 2000, delivery/manufacture of a controlled substance and imitation manufacture

or distribution of a controlled substance; (iv) in 2003, possession of a controlled substance; (v) in

2004, possession of a controlled substance; (vi) in 2005, delivery/manufacture of a controlled

substance; (vii) in 2007, receiving/concealing stolen property (a motor vehicle); (viii) in 2009, use

of a controlled substance; and (ix) in 2015, receiving/concealing stolen property and possession of

a controlled substance.  3d Judicial Cir. of Mich. Crim. Case Records for Nero (Dkt. 380-1).  Nero

seeks to preclude his prior convictions based on the age of some of the convictions, their low

probative value, the unfair prejudice they raise, and the risk they create of misleading the jury.

Mot. to Preclude Convictions at 6–11.  The Government contends that if Nero testifies, it will seek

to introduce his 1999, 2000, and 2005 controlled substance convictions, pursuant to Federal Rules

---

[3] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to the motions and joinders, the briefing includes the Government's response to Nero's motion to preclude admissions of prior convictions (Dkt. 403), the Government's response to Pruitt's joinder in Nero's motion to preclude admissions of prior convictions (Dkt. 402), the Government's response to Nero's motion to preclude derogatory terms (Dkt. 404), the Government's response to Nero's motion to preclude recalling witnesses multiple times (Dkt. 524), and Nero's reply in support of his motion to preclude recalling witnesses multiple times (Dkt. 526).

of Evidence 609 and 404(b).  Resp. to Mot. to Preclude Convictions at 3 (Dkt. 403).  Each rule of

evidence is addressed in turn.

### i. Rule 609

Rule 609 governs impeachment by evidence of a criminal conviction.  The rule sets forth

different standards for admitting evidence, depending on the age of the evidence :

> (a) In General. The following rules apply to attacking a witness's character for
> truthfulness by evidence of a criminal conviction:
> > (1) for a crime that, in the convicting jurisdiction, was punishable by death or
> > by imprisonment for more than one year, the evidence:
> > > . . .
> > > (B) must be admitted in a criminal case in which the witness is a defendant,
> > > if the probative value of the evidence outweighs its prejudicial effect to that
> > > defendant; and
> > . . .
> (b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if
> more than 10 years have passed since the witness's conviction or release from
> confinement for it, whichever is later.  Evidence of the conviction is admissible
> only if:
> > (1) its probative value, supported by specific facts and circumstances,
> > substantially outweighs its prejudicial effect . . . .

Fed. R. Evid. 609(a)–(b).

The parties disagree as to whether more than 10 years have passed since each of Nero's

three convictions or his release from confinement for those convictions—an issue that determines

whether the Court should apply the more lenient admission standard of subsection (a) or the stricter

admission standard of subsection (b).  The Court begins with this threshold question.

The Government argues that the operative date for the start of each ten-year period is when

parole was terminated.  The United States Court of Appeals for the Sixth Circuit has only

"commented, without being asked to decide the issue, that evidence of a prior conviction is

admissible so long as less than ten years have passed since the witness was release[d] from

confinement, 'or the period of his parole or probation had expired.'"  United States v. Peatross,

377 F. App'x 477, 489 (6th Cir. 2010) (quoting United States v. Gaines, 105 F. App'x 682, 695

(6th Cir. 2004), vacated on other grounds, Gaines v. United States, 543 U.S. 1114 (2005)).

However, as the Sixth Circuit has observed, "other circuits, who have considered the question of

what constitutes confinement for the purpose of Rule 609(b), have ruled that confinement does not

include time on probation." Id. at 489–490 (citing United States v. Rogers, 542 F.3d 197, 201 (7th

Cir. 2008); United States v. Broncho, 62 F.3d 1425 (9th Cir. 1995); United States v. Daniel, 957

F.2d 162, 168 (5th Cir. 1992)).  As the Daniel court explained:

> The historical note to Rule 609 shows that, prior to 1972, the rule contemplated that
> the ten-year period should run from "the expiration of the period of his parole,
> probation, or sentence." This section was amended in 1972, however, and now
> states that a conviction is not admissible if more than ten years have elapsed since
> "release from confinement."  The change in the language of the rule forecloses the
> interpretation [that the date of "release from confinement" should not be calculated
> until the termination of a period of probation] . . . .

957 F.2d at 168.  This Court adopts the view of the Fifth, Seventh, and Ninth Circuits and,

therefore, finds that the operative start date of the ten-year period is when Nero was released from

confinement.

Regarding the end of each ten-year period, the Government suggests that the operative date

is the date when Nero allegedly began participating in the conduct underlying the drug offense

charges.  This view does not find support in the plain text of Rule 609(b), which states that

subsection (b) applies "if more than 10 years have passed since the witness's conviction or release

from confinement for it . . . ."  In other words, because Rule 609(b) does not mention the date of

the alleged criminal conduct, the Court is disinclined to view that date as the operative end date of

the ten-year period.  Rather, per the case law, the operative end date is when the defendant's prior

conviction is sought to be introduced (i.e., at the start of the trial or when the defendant testifies at

trial).  See, e.g., United States v. Jackson, 546 F.3d 801, 819 (7th Cir. 2008) ("Pursuant to Federal

Rule of Evidence 609(a)(1), the district court permitted the government to introduce evidence that in 1996 he had been convicted of receiving stolen property.  At the time of the trial, the conviction was just a few weeks shy of being ten years old.  Had the conviction been more than ten years old, of course, it would have been presumptively inadmissible under subsection (b) of Rule 609 absent a finding by the district court that its probative worth substantially outweighed its potential for prejudice . . . .”); United States v. Cathey, 591 F.2d 268, 274 (5th Cir. 1979) (“In [United States v. Cohen, 544 F.2d 781 (5th Cir. 1977)] we computed the age of the prior conviction from the time of the defendant’s release from prison to the commencement of the trial. We see no reason to suggest departing from that approach, except to add a caveat that since the concern is the defendant's credibility when he testifies the correct point from which to measure backwards in time may be the date when he testifies rather than the date when the trial commences . . . .”).  The Court, therefore, utilizes 2022 as the presumptive year of the start date, as the trial is presently set to begin in April 2022.

Subsection (b), therefore, applies to all three prior convictions that the Government seeks to use for impeachment purposes.  According to the Government, in 1999, Nero was sentenced to life probation for his controlled substance offense.  Resp. to Mot. to Preclude Convictions at 6. This means that Nero had no period of confinement for his 1999 conviction, and, as a result, the date of the conviction is the operative start date for determining whether the ten-year period has elapsed.  In 2000, Nero was again sentenced to life probation for his controlled substance offense, id.; consequently, the date of the conviction is the operative start date of the ten-year period.[4]  In

---

[4] The Government points out that later on in 2000, Nero was convicted for probation violations in both his 1999 and 2000 controlled substance cases.  Resp. to Mot. to Preclude Convictions at 6. He served a short sentence for his probation violations, being paroled in July 2001—over two decades ago.  Id.  The fact that his parole was not discharged until 2015 is inconsequential, as the date of the release from confinement does not extend to the date of the termination of parole.

2005, Nero was sentenced to three years' probation for his controlled substance offense.  Id.[5]  So, again, the date of this conviction is the start date of the ten-year period.  Because Nero was convicted for each of his 1999, 2000, and 2005 controlled substance offenses well over ten years ago, the Court applies subsection (b)'s stricter standard for admission of these convictions as impeachment evidence.

Pursuant to subsection (b), the Government may admit Nero's 1999, 2000, and 2005 controlled substance convictions only to impeach Nero if the probative value of these convictions substantially outweighs their prejudicial effect.  "Rule 609(b) creates, in effect, a rebuttable presumption that convictions over ten years old are more prejudicial than helpful and should be excluded."  Peatross, 377 F. App'x at 489 (punctuation modified).  Thus, evidence of convictions more than ten years old should be admitted "very rarely and only in exceptional circumstances." Id. (punctuation modified).  Further, before admitting evidence of convictions more than ten years old, a court should conduct a hearing on the matter.  Id.  "A court has broad discretion to admit evidence of prior convictions after conducting the probative value/prejudicial effect inquiry." United States v. Sloman, 909 F.2d 176, 180 (6th Cir. 1990)  Some of the factors to be considered by a court in making the probative value/prejudicial effect determination include: (i) the impeachment value of the prior crime; (ii) the point in time of the conviction and the witness' subsequent history; (iii) the similarity between the past crime and the charged crime; (iv) the

_____

[5] The Government notes that in 2006, Nero pled guilty to a probation violation, and, as a result, his probation was discharged and he was sentenced to 360 days' imprisonment.  Resp. to Mot. to Preclude Convictions at 6.  Even assuming that this period of confinement counts towards the calculation of the ten-year period, and even assuming that Nero was released from confinement a full 360 days after being convicted (i.e., in 2007), this would still mean that Nero was released from confinement for this violation well over ten years ago.

importance of the defendant's testimony; and (v) the centrality of the credibility issue.  Id. at 180–

181.  Each of these factors is addressed in turn.

First, the impeachment value of the prior convictions will depend on how Nero testifies.  If

he testifies that he has never committed a similar drug crime, the impeachment value of his three

prior controlled substance offenses will be at their highest.  See United States v. McDonel, 362 F.

App'x 523, 529 (6th Cir. 2010) ("The probative value of . . . evidence [of a defendant's prior

convictions] outweighed its potential prejudice once [defendant] 'opened the door' to inquiries

about the convictions by stating that he did not 'do crimes.'").

The Government argues that the impeachment value would also be high if Nero testifies

that he was merely a drug user at the Victory Inn rather than a drug distributer.  Resp. to Mot. to

Preclude Convictions at 7–8 (citing United States v. Bender, 265 F.3d 464, 471 (6th Cir. 2001);

United States v. Gaitan-Acevedo, 148 F.3d 577, 591–592 (6th Cir. 1998)).  However, the cases

cited by the Government do not directly support its position.  In Bender, the defendant had a 1987

conviction for conspiracy to distribute powder cocaine and possession with intent to distribute the

drug.  265 F.3d at 470.  After the defendant testified that she had "never sold drugs" and "began

using drugs in 1992," the court permitted the prosecution "to bring out on cross-examination the

nature of [the defendant's] . . . prior conviction in order to impeach her credibility as a witness."

Id. at 471 (punctuation modified).  Thus, the defendant's prior drug conviction was admissible

because the defendant gave misleading testimony about her past involvement with drugs—not

because the defendant testified that she was only a user rather than a distributor of drugs in the

charged offense.  Likewise, in Gaitan-Acevedo, the court held that because the defendant

"voluntarily introduced the fact that he had been convicted on a drug charge in 1985," the

prosecution was entitled to cross examine the defendant on the conviction.  148 F.3d at 592.  Nero's

three prior convictions will have high impeachment value if he testifies that he has never committed similar crimes, but these convictions will not have high impeachment value if Nero testifies that he merely used drugs at the Victory Inn.

Second, Nero's 1999, 2000, and 2005 convictions all happened a decade or more before the underlying conduct in this case allegedly occurred in 2015. The large gap between the point in time of the convictions and Nero's charged offensive conduct in this case weighs against permitting admission of the convictions. This is because when the prior bad acts did not occur "relatively close in time to the alleged crime," evidence of these prior bad acts is prone to "prejudice [the defendant] . . . for something that happened in the distant past." United States v. Myers, 123 F.3d 350, 363 (6th Cir. 1997).

Third, the parties agree that the past crimes and the presently charged crime are similar. See Mot. to Preclude Convictions at 7; Resp. to Mot. to Preclude Convictions at 8. However, as the Government points out, prejudice resulting from a current crime's similarity to a prior crime can often be fixed with an appropriate limiting instruction. Resp. to Mot. to Preclude Convictions at 8 (citing United States v. Moore, 917 F.2d 215, 235 (6th Cir. 1990)). Indeed, in Moore, the Sixth Circuit determined that "[a]lthough the crimes were similar, the trial court was quick to limit any prejudicial effect by an immediate admonishment to the jury to consider the evidence only as to witness credibility." 917 F.2d at 235. "This cautionary admonishment to the jury," the Moore court held, "provided an adequate safeguard against any potential prejudice possibly engendered by the admission of the prior conviction." Id. Thus, the third factor would not necessarily preclude use of Nero's prior convictions as impeachment evidence, provided that a proper limiting instruction is given.

Fourth, it is presently unclear whether or how Nero will testify, and, as a result, the importance of his testimony is unclear.  In his motion, Nero asserts that he used drugs at the Victory Inn only for his personal use or for his use with friends, not as a conspiracy member or drug distributor.  Mot. to Preclude Convictions at 4–5.  If Nero testifies accordingly at trial, his testimony could be important in undermining one of the elements of a drug conspiracy offense (intent to distribute), particularly if the defense does not rely on any evidence other than Nero's testimony to combat this element.  But the degree of importance is hypothetical at this juncture.

Fifth, the Government argues that Nero's credibility will be central to the determination of guilt, because he will admit to being an addict and using drugs at the Victory Inn but deny involvement in the conspiracy and deny committing any acts constituting drug distribution.  Resp. to Mot. to Preclude Convictions at 10.  As noted above, it is presently unknown whether or how Nero will testify, and it is likewise unknown whether the defense will rely on additional evidence to undermine the charge that Nero intended to participate in the conspiracy and distribute drugs. As a result, the centrality of the credibility issue cannot be determined yet.

The five-factor analysis suggests that if Nero's 1999, 2000, and 2005 controlled substance convictions are admissible under Rule 609(b), it would be in the context of impeaching Nero after he testifies that he has never committed similar drug crimes and upon the Court giving an appropriate cautionary instruction.  Ultimately, because the importance of Nero's testimony—as well of the centrality of the credibility issue—will not be known until trial, the Court defers ruling on the admissibility of these three convictions under Rule 609(b).  See, e.g., United States v. Mabie, No. 15-CR-30158-RHM, 2016 WL 11687625, at *2 (S.D. Ill. May 5, 2016) (deferring ruling on admissibility of prior convictions under Rule 609 "until and unless the Defendant testifies" because, pretrial, whether and how the defendant would testify was "somewhat

hypothetical"); <u>United States v. Carey</u>, No. CR-08-157-B-W-02, 2009 WL 485112, at \*1, \*4 (D. Me. Feb. 26, 2009) (deferring ruling on admissibility of certain prior convictions under Rule 609 because the prejudicial impact and probative value of those convictions "depend[ed] on trial context"). If Nero testifies at trial and the Government seeks to impeach him with evidence of his 1999, 2000, and 2005 controlled substance convictions, Nero may object to the admission of this evidence, and the Court will determine its admissibility at that time.

Because the Government represents that it will not seek to admit any of Nero's other prior convictions under Rule 609, the Court grants Nero's motion to preclude his prior convictions as to these other convictions.

### ii. Rule 404(b)

Evidence of a "crime, wrong, or act . . . may be admissible . . . [to] prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "[T]he district court has broad discretion in admitting evidence under Rule 404(b) . . . ." <u>United States v. Hamilton</u>, 684 F.2d 380, 384 (6th Cir. 1982). Prior to admitting Rule 404(b) evidence, a district court must engage in a three-step analysis: (i) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred; (ii) determine that the prior act is admissible for one of the proper purposes outlined in Rule 404(b); and (iii) apply Rule 403's balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied in Rule 403. <u>United States v. Mack</u>, 258 F.3d 548, 553 (6th Cir. 2001). "[I]t is preferable that the district

court make explicit findings regarding the Rule 403 balancing." Myers, 123 F.3d at 363. Nero challenges only the third step of the analysis. See Mot. to Preclude Convictions at 7–8.[6]

Nero's prior controlled substance convictions are probative. The Sixth Circuit has "repeatedly recognized" that evidence of prior drug distribution is probative of a defendant's intent to distribute. United States v. Ayoub, 498 F.3d 532, 548 (6th Cir. 2007). This is true even if the Government's other evidence of the defendant's intent to distribute is overwhelming. Id. (explaining that the existence of other evidence probative of the defendant's intent to distribute "does not mean the [prior drug activity] . . . evidence was not probative; at best, it means that the [prior drug activity] . . . evidence was not necessary for the conviction").

Turning to the Rule 403 balancing test, courts consider a number of factors. One such factor is the similarity of the prior bad acts to the current alleged offenses. "In order for Rule 404(b) evidence to be admissible, the other crimes evidence must be substantially similar to the offense charged," United States v. Melton, No. 92-3498, 1993 WL 122098, at *2 (6th Cir. Apr. 20, 1993), and "[t]he greater the similarity between Rule 404(b) evidence and the fact in question, the more relevant the Rule 404(b) evidence becomes," United States v. Minor, 498 F. App'x 278, 280 (4th Cir. 2012). As noted above, the parties agree that the current alleged offenses are similar to the 1999, 2000, and 2005 controlled substance offenses. In fact, Nero fears that the offenses

---

[6] Regarding the second step, the 1999, 2000, and 2005 controlled substance convictions are admissible for one of the proper purposes outlined in Rule 404(b)—intent. Nero is charged in the second superseding indictment with (i) conspiracy to distribute a controlled substance and (ii) maintaining drug-involved premises. 2d Superseding Indictment. Where a defendant is charged with such specific intent offenses, evidence of the defendant's prior bad acts is admissible under Rule 404(b) for the purpose of proving such intent. United States v. Myers, 102 F.3d 227, 234 (6th Cir. 1996). This is true "notwithstanding any defense the defendant might raise." United States v. Johnson, 27 F.3d 1186, 1192 (6th Cir. 1994); see also United States v. Lattner, 385 F.3d 947, 957 (6th Cir. 2004) (explaining that when a defendant pleads not guilty, it triggers the government's duty to prove his specific intent beyond a reasonable doubt, even if the defense raised centers on another element of the offense).

are "so similar that any jury would make the unfairly prejudicial inference that Nero must be guilty again now because of his criminal record." Mot. to Preclude Convictions at 7. However, any such prejudicial effect can be properly avoided by giving the jury a limiting instruction that "caution[s] the jury not to consider such evidence for improper purposes." Melton, 1993 WL 122098, at *2.

Other factors relevant to Rule 403's balancing test include the timing of the prior bad acts and the "availability of other means of proof, which would reduce the need for the potentially confusing evidence." Myers, 123 F.3d at 363. In Myers, the evidence of prior bad acts was admissible, in part, due to the fact that the prior bad acts were "relatively close in time to the alleged crime so as to not prejudice [the defendant] . . . for something that happened in the distant past." Id. By contrast, Nero's 1999, 2000, and 2005 convictions happened a decade or more before the instant alleged controlled substance activity started in 2015. See 2d Superseding Indictment. Regarding the availability of other means of proof, the Myers court found that this factor weighed in favor of admitting the prior acts evidence, as "there was scant evidence of intent to distribute." Id. Here, it is presently unknown what other evidence the Government has to prove intent.

Given these unknowns, the Court defers ruling on the admissibility of the 1999, 2000, and 2005 controlled substance convictions under Rule 404(b) until trial. At that point, the Court will be in a better position to assess the proper balance to strike under Rule 403 as it bears on the Rule 404(b) analysis. If the Court does ultimately permit this evidence to be introduced under Rule 404(b), it may give a limiting instruction beforehand. United States v. Feinman, 930 F.2d 495, 499 (6th Cir. 1991).

12

Because the Government represents that it will not seek to admit any of Nero's other prior convictions under Rule 404(b), the Court grants Nero's motion to preclude his prior convictions as to these other convictions.

### B. Derogatory Terms

Nero seeks to preclude the Government from using terms like "prostitute," "sex worker," "victim," or "victim of sex trafficking," to "describe the women involved in this case." Mot. to Preclude Terms at 4. In response, the Government represents that it "does not intend to refer to any victim or witness as a 'prostitute' or 'sex worker,'" nor does it intend to "refer to the non-victim witnesses as 'victims.'" Resp. to Mot. to Preclude Terms at 3 (Dkt. 402). However, the Government does intend to use the term "victim" to refer to the women identified as victims in the second superseding indictment. See id. Thus, the Court's analysis is confined to whether the Government should be precluded from using the term "victim."

Nero argues that "victim" is an overly prejudicial term because it implies an adjudication of guilt, thereby "invad[ing] the province of the jury and den[ying] Defendant a fair trial." Mot. to Preclude Terms at 4. However, Nero cites no case where a court completely prohibited the use of the term "victim." Meanwhile, the Government cites—and the Court has discovered through its own independent research—a number of cases where courts have permitted the use of the term, with limitations. For instance, in this circuit, a court granted the defendants' request to preclude any references to a witness as a "victim," but permitted other witnesses to refer to that witness as an "alleged victim." United States v. Sibley, No. 2:14-cr-196, 2015 WL 13333853, at *2 (S.D. Ohio May 5, 2015). Courts outside this circuit have likewise endorsed the view that "alleged victim" is a preferable term. See, e.g., United States v. Washburn, 444 F.3d 1007, 1013 (8th Cir. 2006) (holding that an instruction referring to "victims" was not erroneous, although "'alleged

victim[]' would have been more precise"). Some courts have required that, if the term "alleged victim" is not used during trial, an instruction must be given to clarify that anyone referred to as a "victim" is either an alleged victim of the crime or a victim of the alleged crime. See, e.g., id. (holding that an instruction referring to "victims" was not erroneous because "the instructions taken as a whole clarify the government's burden of proving all elements of the crime"); United States v. Granbois, 119 F. App'x 35, 38–39 (9th Cir. 2004) (rejecting defendant's contention that the trial court's use of the term "victim" in the elements instruction undermined the presumption of innocence, because the court otherwise made it clear that "the government must prove each of the . . . elements beyond a reasonable doubt"); People of Territory v. Guam, 14 F.3d 1344, 1348 (9th Cir. 1994) (holding that the lower court's instruction that "[a] victim is defined or means the person whom the defendant allegedly subjected to criminal sexual conduct" was "an adequate safeguard against any potential prejudice that might conceivably flow from the use of the word 'victim'") (punctuation modified); Server v. Mizell, 902 F.2d 611, 615 (7th Cir. 1990) (finding that the mere use of the term "victim" in a jury instruction did not impermissibly shift the burden of proof to the defendant because the instructions otherwise made clear that "the state must prove" the charged acts).

In light of the foregoing case law, the Court declines to issue an order outright forbidding the Government from referring to the women identified in the second superseding indictment as victims; thus, Nero's motion to preclude derogatory terms is denied to the extent he seeks such an order. However, the Court will require that these women be referred to as "alleged victims." If Nero wishes, in addition, for a clarifying instruction to be given, he may make such a request at trial.

The Court grants Nero's motion to preclude derogatory terms to the extent that he seeks to preclude the terms "prostitute" and "sex worker," as the Government represents that it will not refer to the women by these terms.

### C.  Calling Witnesses Multiple Times

Nero seeks to prevent the Government from recalling witnesses—including the law enforcement agent who is in charge of the investigation and may be seated at the prosecution's table throughout trial—pursuant to Federal Rule of Evidence 611(a).  Mot. to Preclude Recalling Witnesses at 4–6.  The Government confirms that it intends to present evidence of the criminal events in "chronological order" and thus plans to "recall its case agent" and "perhaps a few additional law enforcement witnesses" during trial to introduce the relevant documentary and physical evidence, and provide orderly testimony for events.  Resp. to Mot. to Preclude Recalling Witnesses at 4, 9.  The Government contends that allowing it to present testimony in this fashion will "make the trial presentation here more 'effective for the ascertainment of the truth,'" id. at 10 (quoting Fed. R. Evid. 611(a)) and that making it "easier . . . for the jury to follow the evidence in a complicated case does not prejudice the defendants," id. (citing United States v. Blankenship, 775 F.2d 735, 741 (6th Cir. 1985)).

Rule 611(a) directs courts to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."  Fed. R. Evid. 611(a)(1)–(3).  Ultimately, "[d]istrict courts have wide latitude over the order of testimony at trial."  United States v. Bailey, 973 F.3d 548, 564 (6th Cir. 2020); see also United States v. Butera, 677 F.2d 1376, 1381 (11th Cir. 1982) (noting that the government's case agent "took the stand on four separate occasions to describe the underlying

events in the case in chronological order" and holding that the district court did not abuse its discretion under Rule 611(a) in permitting the "sequential presentation" of the case agent's testimony).

Nero fears that repeated appearances of the case agent would "impermissibly create[] an aura of credibility with the jury" and waste time, particularly because jurors will be permitted to take notes. Mot. to Preclude Recalling Witnesses at 4–6. To support his argument, Nero relies on United States v. Hamilton, Case No. 16-cr-20062, 2017 WL 11469632 (E.D. Mich. Apr. 18, 2017). There, the court recognized that "some courts have permitted the government to recall its witnesses—in particular, its case agent—when necessary to present the evidence effectively during a long trial." Id. at *1 (citing United States v. Kilpatrick, et al., No. 10-20403 (E.D. Mich.)). However, the court determined that allowing the Government to recall witnesses was not appropriate in that case because (i) "jurors [would be] . . . permitted to take notes during trial," (ii) "there is a danger that a witness who frequents the witness stand, particularly one who is guiding or shepherding the evidence at trial . . ., will become unfairly credible, reliable, or familiar simply by virtue of repeated appearances," and (iii) "repeatedly calling the same witness may needlessly waste the time of jurors, the parties, and the [c]ourt." Id.

Here, the jurors will be permitted to take notes, and there is, as always, some risk that allowing the case agent to frequent the witness stand could make the agent appear credible merely by virtue of his repeated appearances. However, as even Hamilton acknowledges, these considerations do not require a court to preclude the Government from recalling witnesses— especially its case agent—during a long, complex trial. This will be such a trial. The case involves a multi-defendant conspiracy to commit sex and drug trafficking conspiracy over the course of several years. Recently, the parties estimated that the total length of trial will be a minimum of six

weeks.  In similar trials, courts have permitted the Government to recall its case agent or other witnesses to help present the events in an orderly, chronological manner.  United States v. Dimora, 843 F. Supp. 2d 799, 822–823 (N.D. Ohio 2012) ("Other courts have approved of the practice of recalling witnesses to testify to discrete incidents in cases involving complex conspiracies or activities occurring over a long period.") (citing United States v. Edelin, 128 F. Supp. 2d 23, 47 (D.D.C. 2001) (permitting government to present case in chronological order by recalling witnesses); United States v. DeLuna, 763 F.2d 897, 912 (8th Cir. 1985) (finding no abuse of discretion in permitting government to present key witness's testimony in installments); Butera, 677 F.2d at 1381 (finding no error by trial court when it permitted sequential presentation by case agent); United States v. Jackson, 549 F.2d 517, 528–529 (8th Cir. 1977) ("[T]he manner in which [the agent] . . . was called to testify lent a praiseworthy degree of order to this complicated trial. . . .  There was no abuse of discretion in permitting the Government to present its evidence chronologically through the repeated recall of [the agent] . . . as a witness.  In fact, this procedure is commended as one way to clearly present an organized factual recital in an extended conspiracy trial.")).

In light of this case law and because Rule 611(a) authorizes the Court to control the order of interrogation and the presentation of evidence, the Court finds that in order to "facilitate an orderly and comprehensible presentation of this complex case, avoid inefficient use of court time, and avoid jury confusion (and thereby prevent prejudice to the defendants)," the Government will be permitted to allow its case agent and other witnesses to testify in segments related to specific schemes during its case-in-chief.  Dimora, 843 F. Supp. 2d at 823.  As in Dimora and the cases that it cites, the Court will permit Defendants to cross-examine the Government's case agent and

its other witnesses "after each appearance with respect to the testimony covered on direct during that appearance and as to issues of credibility." Id.

Accordingly, Nero's motion to preclude calling witnesses multiple times is denied.

## II.  CONCLUSION

For the foregoing reasons, the Court (i) grants in part and defers in part Nero's motion to preclude his prior convictions (Dkt. 380), (ii) grants in part and denies in part Nero's motion to preclude derogatory terms (Dkt. 382), and (iii) denies Nero's motion to preclude calling witnesses multiple times (Dkt. 516).

SO ORDERED.

Dated:  March 23, 2022                                  s/Mark A. Goldsmith
       Detroit, Michigan                              MARK A. GOLDSMITH
                                       United States District Judge